GEORGE S. CARDONA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
DARWIN THOMAS (SBN 80745)
VALERIE MAKAREWICZ (SBN 229637)
Assistant United States Attorneys
    Room 7211 Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2740/894-2729
    Facsimile: (213) 894-0115
    E-mail: Darwin.Thomas@usdoj.gov
            Valerie.Makarewicz@usdoj.gov

Attorney for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSEPH R. FRANCIS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. CV 09-8521-R<br><br>UNITED STATES' ANSWER AND OPPOSITION TO COMPLAINT FOR TEMPORARY RESTRAINING ORDER AGAINST IRS TAX COLLECTION ACTIONS AND FOR INJUNCTION ORDERING RETURN OF LEVIED FUNDS; SUPPORTING DECLARATIONS<br><br>[No Hearing Set] |

Defendant United States of America submits the following in answer and opposition to plaintiff's complaint seeking a temporary restraining order prohibiting the Internal Revenue Service ("IRS") from taking possession of funds levied on to pay taxes owed by plaintiff, and an injunction ordering that such funds be released to plaintiff.

A.   Facts.

On November 6, 2009, between 9:30 a.m. and 10:00 a.m., Revenue Officer Farrell Stevens requested by telephone and by facsimile that the Internal Revenue Service Center in Ogden, Utah, proceed with jeopardy assessments against the plaintiff for taxable years 2001,

2002, and 2003. See Declaration of Farrell Stevens, ¶ 3. Such assessments were completed by Ogden Service Center at approximately 10:00 a.m. See Declaration of Farrell Stevens, ¶ 4. After receiving confirmation that the jeopardy assessments had been made, Revenue Officers Stevens and Mel Hadley met with special agents of the Internal Revenue Service-Criminal Investigation at their Los Angeles, California office at approximately 11:00 a.m. See Declaration of Farrell Stevens, ¶ 5; Declaration of Lynn Antolin, ¶ 2. Revenue Officers Stevens and Hadley, along with Special Agents Lynn Antolin, Nshan Taschyan, and Salman Farooqui proceeded to plaintiff's business office in Santa Monica, California. See Declaration of Farrell Stevens, ¶ 5; Declaration of Lynn Antolin, ¶ 2.

At 12:22 p.m., Revenue Officers Stevens and Hadley, accompanied by Special Agents Antolin and Taschyan, met with the plaintiff at his business office in Santa Monica. See Declaration of Farrell Stevens, ¶ 6; Declaration of Lynn Antolin, ¶ 3. At this meeting, Revenue Officer Stevens personally served the plaintiff with the Notices of Tax Due on Federal Tax Return and the Notices of Jeopardy Assessment and Right to Review for taxable years 2001, 2002, and 2003. See Declaration of Farrell Stevens, ¶ 6; Declaration of Lynn Antolin, ¶ 3. The meeting with the plaintiff concluded at 12:31 p.m., and Revenue Officers Stevens and Hadley, and Special Agents Antolin and Taschyan, left plaintiff's business office. See Declaration of Farrell Stevens, ¶ 7; Declaration of Lynn Antolin, ¶ 4. Once the Revenue Officers and Special Agents left the building, Revenue Officer Hadley called his office and advised Group Secretary Paula Ludwin that the plaintiff had been served and to commence sending the Notices of Levy via facsimile to UBS Financial Services, Inc. and Morgan Stanley Smith Barney, LLC, to levy upon plaintiff's accounts with these entities. See Declaration of Farrell Stevens, ¶ 8; Declaration of Lynn Antolin, ¶ 4.

Prior to receiving Revenue Officer Hadley's telephone call, Group Secretary Ludwin placed several calls to confirm that the fax numbers were correct and that the fax cover sheets were addressed to the appropriate persons. See Declaration of Paula Ludwin, ¶ 5. These calls were placed from her desk, so she has no record of the exact times of these calls. See Declaration of Paula Ludwin, ¶ 5. While Group Secretary Ludwin was faxing the Notices of

1  Levy, she placed several calls to either confirm that the faxed notices had been received by
2  Morgan Stanley and/or UBS, or to make sure that the faxed notices were addressed to the correct
3  employees of these entities. See Declaration of Paula Ludwin, ¶ 5. She made several of these
4  calls on her cellular telephone, as there was no telephone located near the facsimile machine she
5  used on November 6, 2009. See Declaration of Paula Ludwin, ¶ 5.

6  After receiving instructions by Revenue Office Hadley, Group Secretary Ludwin
7  promptly proceeded to fax the first of the 4 faxes of the Notices of Levy provided to her by
8  Revenue Officer Stevens. See Declaration of Paula Ludwin, ¶ 3. She did not send any of the
9  facsimiles prior to receiving Revenue Officer Hadley's telephone call that the plaintiff had been
10 served and instructing her to begin the faxing process. See Declaration of Paula Ludwin, ¶ 3.

11 The first facsimile Group Secretary Ludwin sent was addressed to John Welker at
12 Morgan Stanley. See Declaration of Paula Ludwin, ¶ 6. Prior to faxing this Notice of Levy, she
13 called the number on the fax cover sheet to confirm that Mr. Welker would be at his office to
14 receive this fax. See Declaration of Paula Ludwin, ¶ 6. She did not fax this Notice of Levy until
15 she had received Revenue Officer Hadley's telephone call that the plaintiff had been served and
16 to begin to fax the Notices of Levy. See Declaration of Paula Ludwin, ¶ 6. Group Secretary
17 Ludwin was told that Mr. Welker no longer worked with Morgan Stanley, but to fax the Notice
18 of Levy and it would be routed to the appropriate person. See Declaration of Paula Ludwin, ¶ 6.
19 Thereafter, she faxed this Notice of Levy. See Declaration of Paula Ludwin, ¶ 6. Afterwards, to
20 confirm that the fax had been received, Group Secretary Ludwin again called the number on the
21 fax cover sheet. See Declaration of Paula Ludwin, ¶ 6. The person answering the phone stated
22 that the fax had been received, and that it was being routed to Toma Kaye and provided Group
23 Secretary Ludwin with her telephone number. See Declaration of Paula Ludwin, ¶ 6. Later,
24 Group Secretary Ludwin spoke with Toma Kaye who stated that she had received the fax. See
25 Declaration of Paula Ludwin, ¶ 6.

26 The second facsimile Group Secretary Ludwin sent was to Crystal Pruden at Morgan
27 Stanley. See Declaration of Paula Ludwin, ¶ 7. At 12:56 p.m., Group Secretary Ludwin placed
28 two calls to the contact number on the fax cover sheet to confirm receipt of the facsimile,

however, no one answered. See Declaration of Paula Ludwin, ¶ 7. Group Secretary Ludwin knows the time of the calls by checking the call log on her cellular phone. See Declaration of Paula Ludwin, ¶ 7. Eventually, Group Secretary Ludwin spoke with Crystal Pruden who confirmed receipt of the facsimile. See Declaration of Paula Ludwin, ¶ 7.

The third facsimile Group Secretary Ludwin attempted to send was to Kevin McCarthy at Morgan Stanley. See Declaration of Paula Ludwin, ¶ 8. Prior to sending the fax, Group Secretary Ludwin called the number on the fax cover sheet and was instructed that Mr. McCarthy no longer worked there, but Crystal Pruden had assumed his position. See Declaration of Paula Ludwin, ¶ 8. Therefore, Group Secretary Ludwin did not send this fax. See Declaration of Paula Ludwin, ¶ 8.

The fourth facsimile Group Secretary Ludwin sent was to Jonathan Gonzalez at UBS Financial Services, Inc. See Declaration of Paula Ludwin, ¶ 9. At 12:50 p.m., Group Secretary Ludwin called the contact number on the fax cover sheet to confirm receipt of the facsimile and spoke with Mr. Gonzalez. See Declaration of Paula Ludwin, ¶ 9. Group Secretary Ludwin knows the time of the call to Mr. Gonzalez by checking the call log on her cellular phone. See Declaration of Paula Ludwin, ¶ 9. At 12:59 p.m., Group Secretary Ludwin called Revenue Officer Hadley to tell her that all 4 Notices of levy had been faxed and received by Morgan Stanley and UBS Financial Services, Inc. See Declaration of Paula Ludwin, ¶ 10. Group Secretary Ludwin knows the time of the call to Revenue Office Hadley by checking the call log on her cellular phone. See Declaration of Paula Ludwin, ¶ 10.

B.   Objections to Declaration of Lisa DuFort.

Besides the documents submitted by plaintiff under the declaration of Cori E. Flanders-Palmer, the only evidence submitted by plaintiff in support of his request for relief, and the only evidence pertinent to the sole issue raised in this matter, i.e., the timing of the IRS giving notice and demand for payment vis a vis the making of the levies, is the declaration of Lisa DuFort. The government makes the following objections to the identified statements in that declaration:

Paragraph 3 stating that IRS agents visited the office of Mantra Films on November 6, 2009, around noon – this statement is objected to for lack of foundation, i.e., whether the

4

declarant has direct knowledge of the statement or whether it is based on hearsay.

Paragraph 4 stating that a colleague reviewed security tapes and determined the time of arrival of the IRS agents at the office – this statement is objected to on the ground of hearsay.

Paragraph 5 stating that the IRS agents served certain documents at the time stated in paragraph 4 of the declaration – this statement is objected to for lack of foundation, i.e., whether the declarant has direct knowledge of the statement or whether it is based on hearsay.

C. <u>Argument</u>.

Plaintiff argues that the IRS levies are invalid because notice of the tax assessments and demand for their payment were not given to plaintiff before the levies were made. Plaintiff then argues that due to this alleged defect in the service of the levies he is entitled to return of the levied funds under applicable law. Plaintiff's argument fails on both accounts. The evidence shows that plaintiff <u>did</u> receive notice of the tax assessments and demand for their payment before the levies were made. Further, the Anti-Injunction Act applies to this case, and plaintiff (1) has an adequate statutory remedy under 26 U.S.C. §7429, (2) has not shown irreparable harm, and (3) has not shown that the government cannot prevail under any circumstances. <u>Enochs v. Williams Packing & Navigation Co.</u>, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

1. Plaintiff's action fails on the facts. His complaint is based solely on his claim that levy action was taken by the IRS before notice of the tax assessments and demand for their payment were given to plaintiff. As detailed above, this allegation is simply not true. Plaintiff was given notice of the assessments and payment of the assessments was demanded. When plaintiff failed or refused to pay the assessments, the levies were made. When jeopardy assessments are made, a demand for immediate payment can be made by the IRS and upon the failure to pay the IRS may levy a taxpayer's property without regard to the normal 10 day waiting period. 26 U.S.C. § 6331(a); <u>Shapiro v. Secretary of State</u>, 499 F.2d 527 (D.C. Cir 1974), <u>affirmed</u> 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). Further, in a jeopardy case, it does not matter how short the time allowed for payment is after the demand is made, the failure or refusal to pay justifies immediate levy action. <u>L.O.C. Industries, Inc. v. United States</u>, 423 F.Supp. 265, 273 (M.D. Tenn. 1976).

    2. The Anti-Injunction Act, 26 U.S.C. § 7421, bars the instant action. The Anti-Injunction Act provides in pertinent part as follows:

> Except as provided in sections . . . 6213(a) . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

  A judicially-created exception to the Act's prohibition permits an injunction to be granted only if the plaintiff demonstrates that (1) normal equity jurisdiction, i.e., irreparable harm and inadequacy of legal remedy, exists, and (2) under "no circumstances" could the Government ultimately prevail on the merits. Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 6-7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); Stonecipher v. Bray, 653 F.2d 398, 401 (9th Cir. 1981).

  In this case plaintiff has not even alleged sufficient facts to bring him within this judicially created exception to the Anti-Injunction statute. First, he has an adequate remedy under 26 U.S.C. § 7429, which provides plaintiff with a prompt judicial review of the jeopardy assessments against him, and permits the court to order the assessments abated and the levies released if the government's action is not sustained (§ 7429(b)(4)). Further, plaintiff has made no showing that he will be irreparably harmed as a result of the government's collection action, nor has he shown that the government could not prevail under any circumstances.

  Plaintiff asserts that the Anti-Injunction Act does not apply, citing L.O.C. Industries, Inc. v. United States, 423 F.Supp. 265 (M.D. Tenn. 1976). Plaintiff makes this argument to facilitate his argument that he is entitled to immediate release of the levies, without regard to the normal requirements for equitable relief, i.e., showing irreparable harm and inadequate remedy at law. However, plaintiff's assertions miss the mark, because L.O.C. Industries, and Laing v. United States, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), on which L.O.C. Industries is based, are inapplicable to the instant case since those cases both involved invalid tax assessments under 26 U.S.C. § 6213(a), a specific exception to the Anti-Injunction Act. Plaintiff doesn't argue that the jeopardy assessment made against him was not made in accordance with applicable procedures. He instead argues that the provisions of 26 U.S.C. § 6331 that require notice and a

demand for payment before levy were not followed. But § 6331 is not an exception to the Anti-Injunction Act. Thus, the Anti-Injunction Act <u>does</u> apply to the instant matter, and to prevail in his request for equitable relief plaintiff must satisfy the requirements of <u>Enochs v. Williams Packing</u>, i.e., show that there is no adequate remedy at law, that he will suffer irreparable harm, and that the government could not prevail under any circumstances.

<u>L.O.C. Industries</u> and <u>Laing</u> both involved "termination" assessments under 26 U.S.C. § 6851,[1] rather than jeopardy assessments under § 6861 which are the assessments involved in the instant matter. In 1976, when <u>Laing</u> and <u>L.O.C. Industries</u> were decided, the government had taken the position that the notice of deficiency procedures involved in jeopardy assessments under § 6861 did not apply to termination assessments under § 6851 because the definition of a tax "deficiency"[2] did not cover such assessments, and that the IRS therefore did not need to send a notice of deficiency to a taxpayer subjected to a "termination" assessment under § 6851. In <u>Laing</u> the Supreme Court disagreed and found that such an assessment was subject to the exception in the Anti-Injunction Act. Essentially the Court found the assessment to be invalid because no notice of deficiency was issued, and it enjoined collection action on the assessment.

The <u>Laing</u> case was decided by the Supreme Court in January 1976, and <u>L.O.C. Industries</u> was decided in June 1976. In October 1976 Congress enacted various tax provisions that at least partially addressed the problem. Public Law 94-455, enacted on October 4, 1976, amended the provisions concerning termination assessments in § 6851, amended the definition of a tax deficiency in § 6211, and most importantly enacted § 7429 to provide for a prompt judicial review of jeopardy and termination assessments. Therefore, the holdings in <u>Laing</u> and <u>L.O.C. Industries</u> are of limited continuing importance.

The Ninth Circuit examined this issue in <u>Perlowin v. Sassi</u>, 711 F.2d 910 (9th Cir. 1983). There the lower court had again found a failure by the IRS to issue a notice of deficiency and had

---

[1] A termination assessment involves a determination by the IRS that immediately closes a taxpayer's tax year so that an immediate tax assessment can be made of the tax liability that has accrued up to the time the tax year is closed.

[2] 26 U.S.C. § 6211

7

granted equitable relief. However, the Circuit Court stated:

> Even though the district court was correct in its interpretation of the statute, injunctive relief may have been improper. The section 6213(a) exception to the Anti-Injunction Act speaks permissively: "Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceedings or levy during the time such prohibition is in force <u>may</u> be enjoined by a proceeding in the proper court." (Emphasis added.)
>
> We recently rejected the argument that proof of an improper assessment mandates injunctive relief. <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 313 (9th Cir.1982) (assessment made prior to a valid notice of deficiency). Along with a showing of improper assessment, the taxpayer must prove irreparable injury and an absence of an adequate legal remedy. <u>Id.</u>; <u>Philadelphia & Reading Corp. v. Beck</u>, 676 F.2d 1159, 1163 (7th Cir.1982) (upon showing of an illegal assessment, district court may refuse injunctive relief if taxpayer failed to prove irreparable harm or inadequacy of legal remedies).

The plaintiff in the instant matter has not shown that the Anti-Injunction Act applies because he has not shown an improper assessment; he has not shown irreparable harm; he has not shown the inadequacy of legal remedies;[3] and he has not shown that the government cannot prevail under any circumstances.

//
//
//
//
//
//
//
//

---

[3] In fact, as set forth above, the remedies in § 7429 are amply adequate.

8

D. Conclusion.

Based on the above, plaintiff's request for a temporary restraining order and for injunctive relief should be denied.

GEORGE S. CARDONA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

11/20/09
DATE

DARWIN THOMAS
VALERIE MAKAREWICZ
Assistant United States Attorneys
Attorneys for United States of America